**Manuel ZURITA, Petitioner-Appellant,**

v.

**UNITED STATES of America, Respondent-Appellee.**

**No. 16939.**

United States Court of Appeals
Seventh Circuit.

May 5, 1969.

Manuel Zurita, Frederick F. Cohn, Chicago, Ill., for petitioner-appellant.

Alfred W. Moellering, U. S. Atty., Fort Wayne, Ind., for respondent-appellee.

Before CASTLE, Chief Judge, DUFFY, Senior Circuit Judge, and FAIRCHILD, Circuit Judge.

CASTLE, Chief Judge.

Petitioner appeals the District Court's denial of an evidentiary hearing on his pro se motion to vacate sentence under 28 U.S.C. § 2255. Petitioner was convicted of robbing a bank by the use of a dangerous weapon, in violation of 18 U.S.C. § 2113(d). The collateral attack on said conviction rests on petitioner's assertion that his privately retained trial counsel, Max Cohen, could not have provided effective assistance of counsel due to an alleged conflict of interest. The sole issue on appeal is whether the allegations contained in the motion entitled

petitioner to an evidentiary hearing in the District Court.

Petitioner, in his motion, stated that "[c]ounsel withheld from the defendant, prior to trial and appeal, the fact that counsel had certain business connections with the alleged robbed bank, said connections being of such nature that counsel used said bank as a business reference." Petitioner then stated that had he known of his attorney's use of the bank as a reference in Martindale-Hubble Law Directory, he would not have retained that attorney to represent him without "some satisfactory explanation to defendant that would have convinced defendant that counsel did not have a divided interest between the bank on one hand and defendant's defense to the accusation of robbing said bank on the other hand." Petitioner further stated:

"It is suggested to this Court that an evidentiary hearing on this motion will reveal the following evidence:

1. That Max Cohen used the Bank as a reference;

2. That Max Cohen had business dealings with the Bank, including loans and mortgages;

3. That Max Cohen has handled certain legal matters for the Bank;

4. That there was a conflict of interest, if known to defendant, would have caused defendant to not retain Max Cohen as counsel." [1]

The District Court denied petitioner's request for an evidentiary hearing, and stated in its Memorandum that "even if [petitioner] established the facts alleged it would not amount to such a conflict of interest as to invalidate his conviction and confinement." The Court cited trial counsel's apparently zealous defense of petitioner, which included the handling of petitioner's direct appeal before this Court, [2] as court-appointed counsel, the filing of a petition for rehearing, and a petition for certiorari before the United States Supreme Court. 386 U.S. 1023, 87 S.Ct. 1379, 18 L.Ed.2d 462. The Court below concluded that the attorney's use of the bank as a reference in a legal directory "does not constitute a conflict of interest," and that the possibility of business dealings with the bank by the attorney "is not sufficient * * in view of the fact that the attorney specialized in the defense of criminal actions as a matter of choice."

The position of a federal prisoner in collaterally attacking his conviction is substantially like that of a state prisoner. See Kaufman v. United States, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (March 24, 1969). Thus, the principles enunciated in Townsend v. Sain, 372 U.S. 293, 313, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), regarding petitions for habeas corpus, apply equally to motions under 28 U.S.C. § 2255. Kaufman v. United States, supra, 394 U.S. at 225–227, 89 S.Ct. at 1072–1075. In Townsend, the Court held that "a federal court must grant an evidentiary hearing to a habeas applicant under the following circumstances: If (1) the merits of the factual dispute were not resolved at the state hearing * * *." 372 U.S. at 313, 83 S.Ct. at 757. In the instant case, therefore, petitioner would be entitled to an evidentiary hearing if the facts alleged in his motion, if proven, would entitle him to relief.

We hold that since petitioner's allegations might, if true, demonstrate a denial of effective counsel, the District Court should have held a hearing to determine the truth of those allegations. In Tucker v. United States, 235 F.2d 238 (9th Cir. 1956), the petitioner alleged that he was denied the right to counsel

---

1. Petitioner also alleged that due to the asserted conflict of interest, counsel failed to file a pre-trial motion for a Bill of Particulars and for discovery under Rules 7 and 16, Federal Rules of Criminal Procedure, or for subpoena under Rule 17(b), and failed to move for a continuance in order to prepare for trial and/or interrogate certain witnesses petitioner claimed would give favorable testimony to his defense.

2. See United States v. Zurita, 369 F.2d 474 (7th Cir. 1966).

in that his court-appointed attorney had previously represented the chief Government witness, the manager of the robbed bank, in a civil matter. In holding that the District Court was required to hold a hearing on this issue, the Court stated:

> "[I]f Tucker's court-appointed attorney neglected to prepare for trial by adequately questioning the manager of the robbed bank and failed to properly cross-examine this important prosecution witness at trial because of a prior attorney-client relationship with the bank manager and the possibility that this witness might again be a paying client, Tucker was denied his constitutional right to counsel. [Citing Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942)]." 235 F.2d at 240.

In People v. Stoval, 40 Ill.2d 109, 239 N.E.2d 441 (1968), the Supreme Court of Illinois held that a defendant, whose court-appointed trial counsel also represented the jewelry store which the defendant was accused of burglarizing, was denied effective assistance of counsel. The following language from that opinion demonstrates the clear reasoning behind the Court's holding:

> "Under similar circumstances (i. e., where the defendant's counsel represented the victim of the burglary in an unrelated civil suit) a United States District Court recently in United States ex rel. Miller v. Myers, (E.D. Pa.1966), 253 F.Supp. 55, 57, found that the defendant's constitutional right to counsel was abridged, stating, 'It takes no great understanding of human nature to realize that the individuals who had been burglarized might be less than happy and might go so far as to remove the attorney from their good graces if this defendant were acquitted or received a light sentence or were placed on probation. Moreover, if the case had gone to trial it might have meant an investigation involving the Carpenters [the owners of the store which had been burglarized] and even cross-examination of them on the stand. The entire situation could be very embarrassing for the lawyer who is naturally interested in having the legal business of the Carpenters, especially when they are much more able to compensate him for his services than the defendant. The circumstances here are such that an attorney cannot properly serve two masters. * * * [H]is [defendant's] right to counsel under the Constitution is more than a formality, and to allow him to be represented by an attorney with such conflicting interests as existed here without his knowledgeable consent is little better than allowing him no lawyer at all. See Gideon v. Wainright [Wainwright], 372 U.S. 335 (1963), 83 S.Ct. 792, 9 L.Ed.2d 799. This situation is too fraught with the dangers of prejudice, prejudice which the cold record might not indicate, that the mere existence of the conflict is sufficient to constitute a violation of relator's rights whether or not it in fact influences the attorney or the outcome of the case.'
>
> "There is no showing that the attorney did not conduct the defense of the accused with diligence and resoluteness, but we believe that sound policy disfavors the representation of an accused, especially when counsel is appointed, by an attorney with possible conflict of interests. It is unfair to the accused, for who can determine whether his representation was affected, at least, subliminally, by the conflict. Too, it places an additional burden on counsel, however conscientious, and exposes him unnecessarily to later charges that his representation was not completely faithful. In a case involving such a conflict there is no necessity for the defendant to show actual prejudice. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; Goodson v. Peyton (4th Cir.), 351 F.2d 905." 40 Ill.2d at 112, 113, 239 N.Ed.2d at 443.

█ We agree with the above authorities that the right to effective assistance of counsel would be nullified if

a criminal defendant's attorney were permitted to labor, albeit conscientiously, under a conflict of interest which was unknown to the defendant. Such a conflict would occur if the attorney represented "two masters" with opposing interests which might require less than an undivided fidelity toward either client. See Canon 6, A.B.A. Canons of Professional Ethics. Thus, if attorney Cohen were shown to have actually represented the bank at a time when the bank's interest in petitioner's trial conflicted with that of petitioner, we would be presented with a situation so "fraught with the dangers of prejudice," [3] that a new trial would be required. We note that in the instant case, as distinguished from *Stoval*, actual prejudicial conduct is alleged.

We recognize that petitioner's pro se motion did not state the allegations supporting the conflict of interest charge with the utmost clarity. The only actual fact appearing on the face of the motion is attorney Cohen's use of the bank as a reference in Martindale-Hubble. The other alleged facts may be speculative, drawn only from the Martindale-Hubble reference. However, the allegations of business dealings with and legal representation of the bank by Cohen were alleged as facts which would be revealed by an evidentiary hearing.

■ Moreover, the courts must view pro se motions of prisoners liberally and not require the specificity expected of a lawyer. Thus, a pro se § 2255 motion may be inartistically or obliquely drawn, but still may require a hearing by the District Court. See United States v. Barillas, 291 F.2d 743, 744 (2d Cir. 1961); United States v. Derosier, 229 F.2d 599, 601 (3rd Cir. 1956). Without

holding an evidentiary hearing in the instant case, the District Court had no way of knowing whether or not the facts alleged by petitioner, who is confined in prison, were sufficient to support a conclusion that attorney Cohen labored under a conflict of interest.[4]

■ Finally, we reject the Government's "floodgate" argument that we must affirm the instant case to accord some degree of finality to criminal proceedings. "Conventional notions of finality of litigation have no place where life or liberty is at stake and infringement of constitutional rights is alleged." Sanders v. United States, 373 U.S. 1, 8, 83 S.Ct. 1068, 1073, 10 L.Ed.2d 148 (1963).

Accordingly, we vacate the judgment order of dismissal and remand the case to the District Court, with directions to hold an evidentiary hearing.

Vacated and remanded.

FAIRCHILD, Circuit Judge (concurring).

I think it is a close question whether petitioner, pro se, has said enough to call for an evidentiary hearing, and I do not dissent. But if it should appear only that petitioner's attorney was counsel for the robbed bank in some matter at the same time he was counsel for petitioner, and failed so to inform petitioner, I would not consider those bare facts a sufficient reason for granting a new trial. In my view the district court should not set aside the conviction unless the evidence also shows a probability that the relationship between petitioner's retained counsel and the bank was sufficient to and did cause counsel to be ineffective in representing petitioner.

3. People v. Stoval, *supra*, 40 Ill.2d at 113, 239 N.E.2d at 443.

4. See Turner v. Maryland, 303 F.2d 507, 511 (4th Cir. 1962). "The petition may turn out to be an abuse—a complete fabrication, born of a prisoner's desire to

shift the blame for his predicament from his own shoulders upon those of a conscientious lawyer who did his full professional duty at a personal sacrifice. But this may not be surmised; there should be a hearing to determine the truth."